|! MURRAY, J.,
concurs and assigns reasons.
’ Although I agree with the result reached by the majority, I write separately to explain my reasoning.
This case arises out of a December 20, 1987 collision between two Philippine vessels, the MW DONA PAZ and the M/T VECTOR, that occurred in Philippine waters. The M/V DONA PAZ — a passenger ferry operated by Sulpicio Lines, Inc., a Philippine corporation — was transporting thousands of passengers. The M/T VECTOR — a tanker operated by Vector Shipping Corp., a Philippine corporation — was transporting petroleum products pursuant to an afreightment contract between Vector Shipping and Caltex Philippines, Inc., a Philippine corporation. About five thousand Philippine citizens died in the collision, spurring lawsuits by their family members in both the Philippines and the United States. |⅞ Ultimately, suits were filed in two Philippine provinces, Manila and'Catbalogan, and two states, Texas and Louisiana.
*462 On December 8, 1988, this suit was commenced in Civil District Court for the Parish of Orleans (the “CDC Suit”). The plaintiffs in this suit are twelve Philippine citizens, one Philippine association, and an asserted class of otherwise unidentified claimants.[1] The defendants in this suit are the owners of the two vessels, Sulpicio Lines, Inc., and Vector Shipping Co.; the alleged charterers of the M/T VECTOR, who are identified as Caltex related entities; [2] and the insurer of the MTV DONA PAZ, Steamship Mutual Underwriting Association (Bermuda), Ltd. (“Steamship Mutual”). Plaintiffs, however, requested that service of the petition be withheld. Indeed, plaintiffs did not request service on any defendant in this suit until December 1993. Moreover, the petition has never been served on the two vessel owners.
In December 1990 (before they were served with the petition), two of the defendants, Steamship Mutual and Sulpicio Lines, Inc., removed the CDC Suit to federal court. In September 1990, the federal court remanded the suit to state court. From September 1990 until December 1993 (when plaintiffs requested service be made on Caltex), the CDC Suit was dormant. During this time, plaintiffs pursued virtually identical suits in Texas courts.
In December 1989, plaintiffs filed suit in the County of Harris, Texas. In February 1990, that suit was removed to federal court. In June 1990, the Texas federal district court dismissed that suit on forum non conveniens grounds. In August 1990, while the appeal from that decision was pending, a second suit was | sfiled in Harris County. In January 1991, that suit was removed. In July 1991, that suit was consolidated with the first Texas suit. In March 1992, the Texas federal district court granted Caltex’s motion to dismiss on forum non conveniens grounds, finding that the Philippines was the proper situs for the litigation and that the Philippines provided an adequate, available forum.
In 1991, two major tort suits were commenced before Branch 39 of the Regional Trial Court of Manila, Philippines; in 1992, a third suit was commenced in Manila, and it was consolidated with the other two suits (the “Manila Consolidated Cases”). These suits remain pending.
In December 1993, plaintiffs requested the CDC Suit be served on Caltex. In January 1994, Caltex removed the suit to federal court. In May 1994, the Louisiana federal court remanded the case to state court. Caltex then filed a motion in Texas federal district court seeking injunctive relief against the plaintiffs pursuing their claims in any American court. The Texas federal district court denied that motion and the federal Fifth Circuit affirmed, concluding that “the dismissal on f.n.e. ¡forum non conveniens ] grounds in this case, whether designated as ‘with prejudice’ or ‘without prejudice,’ cannot serve as the res judicata foundation for a later injunction against the Louisiana state proceedings.” *463 Baris v. Sulpicio Lines, Inc., 74 F.3d 567, 570 (5th Cir.1996)
For the next few years, the focus of the CDC Suit was on discovery aimed at establishing personal jurisdiction over the defendants in Louisiana. Indeed, the plaintiffs filed a first supplemental and amended petition in October 1998 to allege contacts between Caltex and New Orleans.
In 1999, the Louisiana Legislature amended La. C.C.P. art. 123 to broaden the forum non conveniens doctrine in this state.[3] In December 1999, defendants 14(Caltex’s and Steamship’s) filed a joint motion in which they informed the trial court of this recent amendment to La. C.C.P. art. 123 and requested a status conference to discuss the pending forum non conveniens exceptions. In April 2000, a status conference was held, and in September 2000, a hearing was held.
On November 30, 2000, the trial court granted defendants’ forum non conveniens exceptions. Tracking the language of La. C.C.P. art. 123, the judgment required the defendants to file a waiver of any defense based on prescription that had matured since the commencement of the Louisiana action and indicated that the court would enter a conditional judgment of dismissal upon receipt of that waiver. Caltex and Steamship complied with that condition. In its reasons for judgment, the trial court noted that “[t]his case cries out to be heard in the Philippines ... it is where the accident occurred, where the witnesses and plaintiffs reside, where the defendants have previously litigated cases arising from the accident and the plaintiffs have claims pending against all defendants.” The court denied plaintiffs’ motion for new trial.
In May 2001, plaintiffs filed a timely appeal with this court from the trial court’s decision. However, that appeal was dismissed on joint motion of the parties and remanded to the trial court so evidence could be presented to the trial court regarding the actions plaintiffs had taken in the Philippines during the pendency of that appeal.
On March 6, 2001, plaintiffs filed a complaint in the regional trial court in Catbalo-gan, Samar; the defendants were neither served with nor informed of this suit. In connection with that complaint the plaintiffs filed a Certificate of Non-Forum Shopping in which they averred that all of the U.S. defendants had waived ^prescription. On March 28, 2001, the plaintiffs’ Catbalogan complaint was dismissed as prescribed. On July 4, 2001, Caltex filed a motion for reconsideration of that dismissal, which was denied by the Catbalogan court on September 4, 2001. In its reasons for denying the motion to reconsider, the court stated:
The defendants need not be served with Court processes or orders. They were not served with summons together with a copy of the complaint. This is a peculiar case where the dismissal of the complaint hurts the defendants. There is no violation of substantial justice as the law *464 allows the Court to dismiss a complaint which are [sic] patently without jurisdiction. As in this case, the cause of action has prescribed and it will be useless for the court to entertain either the defendant, the plaintiff or any person for that matter.
Although the Catbalogan court acknowledged that the plaintiffs had certified that all U.S. defendants had waived prescription, it found that this was “... non-availing since the new provision of Rule 9 is mandatory in nature as can be seen from the use of the word “shall” in the provision.”
On September 24, 2001, plaintiffs filed a motion to reinstate their claims in the CDC Suit, citing the Catbalogan court’s dismissal of their action. In their motion Plaintiffs quoted from new Rule 9 referred to above. That rule provides that “when it appears from the pleadings or evidence on the record that ... the action is barred by a prior judgment or by statute of limitations, the court shall dismiss the claim.” According to plaintiffs, this new rule precluded the waiver of prescription in the Philippines. Citing the return jurisdiction provision of the court’s first dismissal order and La. C.C.P. art. 123, plaintiffs requested the court reinstate their claims.
Also on September 24, 2001, Caltrex filed in the CDC Suit a Motion to Dismiss the Plaintiffs’ Claims. Caltrex claimed that plaintiffs did not “commence” a proceeding in the Philippines but rather commenced a “secret” lawsuit and attempted to “sabotage” their claims” in the Philippines. Alternatively, Caltex | ¿requested the court order plaintiffs to file their intervention in the Manila Consolidated Cases, which were scheduled to be heard on May 14, 2002.
On March 21, 2002, a status conference was held, and the trial court ordered that “[i]n accordance with La. C.C.P. Article 123(C), the defendants are ordered to file within 10 days of the notice of Signing of this Judgment a waiver of any defense based upon prescription that has matured since the commencement of the action in Louisiana.” The court further stated that upon receipt of that waiver it would enter a conditional judgment of dismissal. On March 27, 2002, the trial court entered that judgment, which reads:
[T]his matter is dismissed conditionally, the plaintiffs claims to be brought in the Regional Trial Court in Manila. This dismissal is conditioned upon allowing for reinstatement of the same cause of action in the same forum in the event a suit on the same cause of action or on any cause of arising out of the same transaction or occurrence is commenced in an appropriate forum within sixty days after the rendition of the judgment of dismissal and such foreign forum is unable to assume jurisdiction over the parties or does not recognize such cause of action or any cause of action arising out of the same transaction or occurrence.
The trial court further ordered plaintiffs to file their intervention or petition in the Manila Consolidated Cases well before the May 14, 2002 hearing. The trial court’s reasons for judgment state that “[t]he Regional Trial Court in Manila is a venue where all plaintiffs can seek redress. It is infinitely more convenient to the plaintiffs.”
Plaintiffs then filed an appeal with this court. While that appeal was pending, the Manila court on July 2, 2002 denied plaintiffs’ intervention. The Manila court found it was bound by the Catbalogan court’s earlier dismissal of plaintiffs’ claims as prescribed. Plaintiffs then filed with this court a motion to supplement the record on appeal with a copy of the Manila court’s July 2, 2002 judgment. Plaintiffs argued that the Manila court had refused to as *465 sume jurisdiction over their claims, so the July 2, 2002 judgment from Manila was |7relevant to the issue of whether or not dismissal of their claims on forum non conveniens grounds is appropriate.
Because the Manila court’s judgment was rendered after the trial court issued its March 27, 2002 judgment, we concluded that it is inappropriate to supplement the record with the Manila court’s judgment, which was unavailable to the trial court at the time its decision was rendered. Citing La. C.C.P. article 2164 and the special circumstances presented, we found that judicial economy required a remand to allow the trial court the opportunity to review the July 2, 2002 Manila court judgment and render a new ruling after determining what effect, if any, this foreign judgment has on its decision regarding whether this lawsuit should be dismissed on forum non conveniens grounds.
On remand, Caltex filed a motion to rule that the Manila court’s order had no effect on the court’s conditional dismissal of the suit on forum non conveniens grounds because plaintiffs’ procedural maneuverings intentionally deprived Caltex of a Filipino forum. Caltex further argued that good faith is a requirement for a conditional forum non conveniens dismissal and that plaintiffs’ bad faith vitiates any right to return to a Louisiana forum. Plaintiffs countered that they fully complied with the trial court’s order and were entitled to have their claims reinstated under La. C.C.P. art. 123 because they was no other forum available to them.
On January 27, 2004, the trial court rendered judgment reinstating plaintiffs’ claims. In its reasons for judgment, the trial court stated:
While the actions of Plaintiffs in both Catbalogan and Manila give the Court pause, this Court finds that Plaintiffs complied with this Court’s orders in a difficult situation. Both the first and second orders of dismissal of this Court provided for reinstatement of the case in the Civil District Court for the Parish of Orleans should a Philippine court refuse to accept jurisdiction over it. Subsequent to the first dismissal, Plaintiffs filed their claims in the regional trial court in Catbalogan. This venue was in the locale where the victims lived, boarded the ferry, and nearest to the site of the disaster. Plaintiffs then filed a | sproper motion to intervene in a Manila case following this Court’s second dismissal order. At the time of the Manila intervention, Plaintiffs were appealing the conditional dismissal for forum non conveniens. Accordingly, Plaintiffs were put in the difficult position of asserting one position in Manila and another with the Fourth Circuit. Regardless of position taken by Caltex, Plaintiffs have complied with the orders provided by this Court.
Because the doctrine of forum non conve-niens presupposes the existence of an available foreign forum, and no other forum would entertain plaintiffs’ claims, the trial court found reinstatement was appropriate. However, the trial court granted the defendants’ motion for partial new trial, and imposed the following three limitations on its order reinstating plaintiffs claims:
1. The Court’s January 27, 2004 Judgment reinstates only those plaintiffs whose intervention was denied by the Manila trial court (the “Intervening Plaintiffs”), not the more than 3,800 plaintiffs with cases pending in the Manila trial court;
2. The Court’s January 27, 2004 Judgment does not prohibit any defendant from re-urging a forum non conveniens exception in the event circumstances change in the Philippines (such -as the Manila intervention being permitted); and
*466 3. The Court’s January 27, 2004 Judgment is not intended to authorize the Intervening Plaintiffs to dismiss their motion to intervene filed in the Manila proceedings.
On appeal, defendants contend the trial court erred in reinstating plaintiffs’ claims under La. C.C.P. art. 123. In support of that contention the defendants argue that a good faith requirement should be en-grafted onto this provision. Because, they argue, the plaintiffs were not in good faith in their efforts to have their claims heard by the courts in the Philippines, the trial court should not have reinstated plaintiffs’ claims.
The argument, however, ignores the fact that the Philippine courts did not base their dismissal of plaintiffs’ claims on any actions or assertions by the | nplaintiffs’ counsel. The Philippine courts dismissed plaintiffs’ claims because they were prescribed, and, under Philippine law, prescription may not be waived[4].
Given these circumstances, I agree with the majority’s finding that the trial court did not err in enforcing the return jurisdiction provision its conditional dismissal and reinstating plaintiffs’ claims. I also agree with the majority’s finding that the trial court did not err in granting defendants’ motion for partial new trial and imposing the limitations it imposed.
For these reasons, I respectfully concur.
LOVE, J., concurs for the reasons assigned by Judge MURRAY.

. Although the CDC has been pending since 1988, the asserted class has never been certified. Although shortly after the collision an attempt was made to bring a class action in the Philippines, that attempt was unsuccessful.

. These Caltex related entities are: Cal-Tex Philippines, Inc.; Cal-Tex Petroleum Corp.; Cal-Tex Asia, Ltd.; Cal-Tex Oil Corp.; California Texas Oil Corp.; Cal-Tex Philippines Petroleum Company, Inc.; and Cal-Tex Trading and Transport Corp. (hereinafter the Caltex entities are referred to for ease of reference collectively as "Caltex.”) Caltex Corporation, the parent corporation of Caltex Philippines, is a Delaware corporation. Although Caltex Corporation's present principal place of business is in Singapore, at the time of the collision its principal place of business was in Irving, Texas.

. As amended, La. C.C.P. art. 123 permits a court to dismiss an action without prejudice when: (1) the claim is based on acts or omissions originating outside the state, (2) a more appropriate forum outside the state exists, and (3) the plaintiff is not domiciled inside the state. 1 Frank L. Maraist and Harry T. Lem-mon, Louisiana Civil Law Treatise: Civil Procedure § 3.8 (2003 Supp.). However, before the trial court dismisses the suit, the court must require the defendant waive any defense based on prescription maturing after the commencement of the Louisiana action in the event suit is refiled in an appropriate foreign forum within sixty days of the dismissal. Id. The court may condition the dismissal of the suit on the foreign forum’s assuming jurisdiction and recognizing a cause of action arising out of the same transaction or occurrence. Id.

. Although the plaintiffs’ withholding service of the Louisiana suit for over five years while they pursued their claims in Texas contributed the fact that almost a decade passed between the collision and the forum non conve-niens exception, the defendants must share some responsibility for the long delay. As the federal court noted, defendants were not totally without fault in that they attempted to remove the case to federal court in 1990. Baris, 74 F.3d at 574.