**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
No. 94-20498

VICTOR C. BARIS, et al.,

Plaintiffs-Appellees,

VERSUS

SULPICIO LINES, INC., et al.,

Defendants,

CALTEX PETROLEUM, INC., et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Jnauary 23, 1996

Before SMITH and EMILIO M. GARZA, Circuit Judges, and Stagg,[*] District Judge.

JERRY E. SMITH, Circuit Judge:


Caltex Petroleum, Inc. ("Caltex"), and Steamship Mutual Underwriting Association (Bermuda), Ltd. ("Steamship Mutual"), appeal the district court's denial of an injunction to bar plaintiffs' suit in Louisiana state court. Concluding that the district court did not reversibly err, we affirm.

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

## I.

In December 1987, the M/V DONA PAZ collided with the M/T VECTOR in the Tablas Strait in the Philippines; approximately 5,000 Filipino citizens lost their lives. The M/V DONA PAZ was a ferry boat owned and operated by Sulpicio Lines, Inc., a Philippines corporation; the M/T VECTOR was a tanker owned and operated by Vector Shipping Corp., also a Philippines corporation. At the time of the collision, the tanker was carrying petroleum products for Caltex Petroleum, Inc., Caltex Petroleum Corporation, and Caltex Oil Corporation, corporations with their principal place of business in Texas.

## II.

Plaintiffs, family members of those who perished, filed suit in Louisiana state court in December 1988 but withheld service of process for five years. In December 1989, plaintiffs, individually and on behalf of a class purported to number up to 5,000 Filipinos, sued in Texas state court, naming nine Caltex defendants (collectively "Caltex") and seventeen other defendants. The class, however, has never been certified. Claims were made pursuant to general maritime law, the Death on the High Seas Act, and other provisions of state and federal law pursuant to the saving to suitors clause, 28 U.S.C. § 1331(1). Plaintiffs asserted that Caltex was negligent in entrusting its cargo for shipment on the M/T VECTOR.

The case was removed to federal court in February 1990. The

2

district court upheld its subject matter jurisdiction and dismissed on forum non conveniens ("f.n.c.") grounds in June 1990.

Plaintiffs appealed on the grounds that the district court lacked subject matter jurisdiction and, in the alternative, had failed to apply the correct analysis to the f.n.c. claim. In Baris v. Sulpicio Lines, Inc., 932 F.2d 1540 (5th Cir.), cert. denied, 112 S. Ct. 430 (1991) ("Baris I"), we upheld the district court's jurisdiction but vacated and remanded on the f.n.c. issue. We expressed concern that the district court had not imposed conditions that would guarantee the plaintiffs a fair opportunity to litigate in the Philippines. Id. at 1552.

While the appeal was pending, plaintiffs filed another suit in Texas state court against Caltex in August 1990; process was served five months later. This suit was similar to the first Texas state action and was removed in January 1991, then consolidated with the first matter in July 1991.

Caltex again moved for a dismissal on f.n.c. grounds. On March 3, 1992, the district court determined that the Philippines was the proper situs for the litigation and that the Philippines provided an adequate and available forum. The motion to dismiss was granted with prejudice.

The dismissal was conditioned on five things that would ensure that the defendants would be amenable to suit in the Philippines. Defendants had to certify that each would (1) submit to service of process and jurisdiction in the Philippines; (2) formally waive any statute of limitations defense; (3) agree that discovery already

taken could be used in the Philippines; (4) make available in the Philippines all relevant documents and witnesses under its control; and (5) formally agree to satisfy any final judgment rendered by the Philippine courts.  Caltex agreed to the conditions and has fully complied with the court order.  Moreover, the plaintiffs have initiated litigation in the Philippines.

Plaintiffs failed timely to appeal the dismissal.  As a result, this court dismissed their appeal.  See Baris v. Sulpicio Lines, Inc., No. 92-2296 (5th Cir. Dec. 9, 1992) (per curiam) (unpublished).

The Louisiana state suit that had been filed in December 1988 was served on Caltex in late December 1993.  Apparently, the suit was a secret until two defendants, Sulpicio Lines, Inc. ("Sulpicio"), and Steamship Mutual happened upon it in February 1990.  Those defendants attempted to remove, but in September 1990 the Louisiana federal court remanded the matter to state court.  Caltex had not yet been served and was not a party to the removal and remand proceedings.  The suit was dormant until Caltex was served in December 1993.

In January 1994, Caltex attempted to remove the case to Louisiana federal court.  On May 13, 1994, the matter again was remanded on the ground that the Caltex removal was untimely because more than one year had passed since suit was filed.  The court did not address the argument that the Louisiana suit had been revived merely in order to avoid the preclusive effect of the Texas dismissal.

4

Caltex returned to Texas to seek relief from the federal district court that had entered the f.n.c. dismissal with prejudice. Caltex filed a motion for a hearing to force the plaintiffs to show why they should not be enjoined from pursuing their claims in any American court. The court denied injunctive relief, apparently thinking that it was powerless to grant it.

The court stated that it thought that the dismissal with prejudice applied only to the relitigation of the f.n.c. issue. Although the court found the plaintiffs' tactics "repugnant," it held that it had no jurisdiction to enforce its prior decision because it concluded that in dismissing on f.n.c. grounds, it had not entered a final judgment on a substantive point of law. The defendants now appeal the refusal to grant injunctive relief.

III.

The Anti-Injunction Act states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The last exception, "to protect or effectuate its judgments," is commonly referred to as the "relitigation exception." District courts can enter injunctions as a means to enforce prior judgments. Royal Ins. Co. of Am. v. Quinn-L Capital Corp., 3 F.3d 877, 881 (5th Cir. 1993), cert. denied, 114 S. Ct. 1541 (1994); Santopadre v. Pelican Homestead & Sav. Ass'n, 937 F.2d 268, 273 (5th Cir. 1991). Res judicata operates as a

5

bar§§enforceable by federal injunction§§to a state proceeding in which a party seeks to relitigate claims that have been decided by a federal court.

As a general matter, federal courts have ancillary jurisdiction[1] to enjoin relitigation in state court; they do not need a basis for jurisdiction that is independent of the jurisdiction that supported the original judgment. Mooney Aircraft, Inc. v. Foster, 730 F.2d 367, 374 (5th Cir. 1984). Ancillary jurisdiction enables a court "to manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen v. Guardian Life Ins. Co. of Am., 114 S. Ct. 1673, 1676 (1994).

In this case, the district court's prior judgment, which Caltex argues can support an injunction against the Louisiana proceedings, dismissed the claims "with prejudice," provided certain conditions allowing litigation in the Philippines were met. The Caltex defendants maintain that this dismissal precludes the plaintiffs from litigating their claims in any court, state or federal, in the United States.

A dismissal "with prejudice" has important consequences: "It is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action." Astron Indus. Ass'n v. Chrysler Motors Corp., 405 F.2d 958, 960 (5th Cir.

---

[1]    For actions filed on or after December 1, 1990, "ancillary jurisdiction" is included within what is now called "supplemental jurisdiction." See Royal Ins., 3 F.3d at 881 n.2.

6

1968); see also 1B JAMES W. MOORE & JO D. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 0.409 [1.SS2], at III-140 (2d ed. 1995). We conclude, however, that the dismissal on f.n.c. grounds in this case, whether designated as "with prejudice" or "without prejudice," cannot serve as the res judicata foundation for a later injunction against the Louisiana state proceedings.

Generally, res judicata acts as a bar to a subsequent suit when the resolution of the initial proceeding has been "on the merits," which suggests that the substantive claims have been addressed by the court. See generally 18 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4435 (1981). The common law venue rule of f.n.c., by contrast, is a doctrine "of procedure rather than substance." American Dredging Co. v. Miller, 114 S. Ct. 981, 988 (1994).

Our inquiry is not ended, however, as the use and application of the phrase "on the merits" has been imprecise at best. See 18 WRIGHT ET AL., supra, at 329-30. This court has held that certain dismissals that do not reach the substantive issues of the litigation still may be regarded as "on the merits" for purposes of res judicata and preclusion. See, e.g., Anthony v. Marion County Gen. Hosp., 617 F.2d 1164, 1168-69 (5th Cir. 1980).

Defendants cite several cases for this proposition, including Anthony. But all of these cases involve involuntary dismissals of the type anticipated by FED. R. CIV. P. 41(b), which states:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its

order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

The rule creates three distinct categories of involuntary dismissals. The first category includes cases of the plaintiff's failure to prosecute or to comply with the rules of procedure or a court order. The rule states that these dismissals, unless otherwise specified by the courts, operate as adjudications on the merits. Courts in this circuit have given these types of dismissals preclusive effect because the plaintiff has, in effect, abused his opportunity for a full and fair litigation and, thus, has forfeited the right to pursue his claim.[2]

These first-category dismissals "primarily involve situations in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them." Costello v. United States, 365 U.S. 265, 286 (1961). Thus, logic dictates that a subsequent action should be barred following such a dismissal. Id.

The second category of dismissals includes dismissals for lack of jurisdiction, for improper venue, or for failure to join a party as specified by FED. R. CIV. P. 19. These dismissals are not

---

[2] See, e.g., Anthony, 617 F.2d at 1168-69 (dismissal for failure to prosecute); In re Reed, 861 F.2d 1381, 1382-83 (5th Cir. 1988) (holding that dismissal for failure to comply with discovery orders is on the merits); Dillard v. Security Pac. Brokers, Inc., 835 F.2d 607, 608 (5th Cir. 1988), cert. denied, 113 S. Ct. 1046 (1993) (holding that dismissal for failure to appear at a deposition is on the merits); Truck Treads, Inc. v. Armstrong Rubber Co., 129 F.R.D. 143, 147 (W.D. Tex. 1988), aff'd as modified, 868 F.2d 1472 (5th Cir. 1989) (dismissal for failure to comply with discovery rules treated as on the merits).

considered adjudications on the merits and ordinarily do not, and should not, preclude a party from later litigating the same claim, provided that the specific defect has been corrected. See 18 WRIGHT ET AL., § 4436, at 338 (stating that "a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits") (footnote omitted). Such a dismissal should, however, preclude relitigation of the specific issue of jurisdiction, venue, or joinder already resolved. See id. § 4435, at 334.

The third category of dismissals encompasses dismissals "not provided for in this rule." This includes, for example, a dismissal for a plaintiff's failure to comply with a federal rule, as provided for in the first sentence of rule 41(b), but on the court's own motion. Moreover, the dismissal in this caseSSon f.n.c. groundsSSis also a dismissal not provided for in rule 41. According to a leading treatise, this provision in rule 41(b) "has caused substantial difficulty," as "[t]here are many grounds of dismissal that do not seem to fall within the categories 'provided for in this rule' and yet clearly should notSSand do notSSoperate as an adjudication that precludes a second action on the same claim." See 18 WRIGHT ET AL., supra, § 4435, at 333-34.

In Costello, the Court announced several general principles regarding rule 41(b) that now inform our analysis. Costello involved a denaturalization proceeding in which the government failed to file a good-cause affidavit that was a prerequisite to any proceeding in which the government sought to revoke

9

citizenship.  The district court dismissed the first proceeding for failure to file the affidavit but did not specify whether the dismissal was with prejudice.   The defendant argued that the dismissal was "on the merits" and, therefore, barred the government from attempting a second revocation.

The Court held that the dismissal was for "lack of jurisdiction" under rule 41(b).  365 U.S. at 285.  As a result, the government could pursue the second proceeding.  The Court expressly held that the "lack of jurisdiction" exception was not limited to "the fundamental jurisdictional defects which render a judgment void and subject to collateral attack, such as lack of jurisdiction over the person or subject matter."   Id.  Instead, the Court broadened the exception to cover "those dismissals which are based upon a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim."  Id.  Thus, the failure to file the affidavit was encompassed by the lack-of-jurisdiction exception.[3]

As noted above, the Court went on to say that the first-category dismissals reflect a policy whereby defendants should not be forced to suffer from a plaintiff's misstep once they have had to incur the inconvenience of preparing to meet the merits of the case.  Id. at 286.  Moreover, the Court found that situations involving third-category dismissals "not provided for in this rule" should operate as adjudications on the merits only where the policy

_____

[3]     For criticism of Costello, see 18 WRIGHT ET AL., supra, § 4435, at 334-336 (calling the Court's interpretation "directly objectionable because it involves so slippery a method of manipulating the concept of jurisdiction").

10

supporting first-category dismissals is "equally applicable."  Id.
For example, if a court dismisses a case sua sponte for the
plaintiff's failure to comply with an order, the dismissal should
be regarded as on the merits.  Id. at 287.


                              IV.

     While Costello did not specifically address the issue of a
dismissal on f.n.c. grounds, we will not give the instant dismissal
preclusive effect, even in light of the "with prejudice"
designation, in this case.  Using the principles announced in
Costello, and considering the basic nature of the f.n.c. doctrine,
we cannot regard such an f.n.c. dismissal as "on the merits" for
res judicata purposes as to the entire claim.

     Arguably, an f.n.c. dismissal falls under the Court's
expansive definition of the "lack of jurisdiction" language in rule
41(b).  A convenient forum could be regarded as a "precondition
requisite to the Court's going forward to determine the merits" of
the claim.  Id. at 285.[4]

     Strictly speaking, however, f.n.c. is not a refusal to hear a
case for "lack of jurisdiction" as stated in rule 41(b); it is a
discretionary refusal to exercise jurisdiction that plainly does

_____

     [4]     The Court's recent pronouncement in American Dredging suggests that
an f.n.c. dismissal might fall under the "improper venue" provision of 41(b).
Although the Court was not interpreting 41(b), it stated that f.n.c. "is nothing
more or less than a supervening venue provision."  114 S. Ct. at 988.

     Because the Court was not interpreting 41(b), and because of the
longstanding distinction between a 28 U.S.C. § 1404(a) f.n.c. transfer and an
improper forum, see, e.g., Tel-Phonic Servs. v. TBS Int'l, Inc., 975 F.2d 1134,
1141 (5th Cir. 1992), we treat an f.n.c. dismissal as distinct from an "improper
venue" dismissal.

                              11

exist.  While f.n.c. is not a "jurisdictional" concept, an f.n.c. dismissal follows "the same rules" as a dismissal for lack of jurisdiction or improper venue.  See 18 WRIGHT ET AL., supra, § 4436, at 339.  Moreover, such an f.n.c. dismissal, like a dismissal for lack of jurisdiction or improper venue, "does not establish claim preclusion"; it can work to preclude the relitigation only of the f.n.c. issue in that court.  Id. at 346.  Accord Mizokami Bros. v. Mobay Chem. Corp., 660 F.2d 712, 715-17 (8th Cir. 1981).

An f.n.c. dismissal is a "deliberate refusal[] to decide the substantive issues presented" because the court was mistakenly chosen.  See 18 WRIGHT ET AL., supra, § 4436, at 347.  Furthermore, "[n]o apparent reason exists to justify forfeiture of the underlying claims upon a mistaken choice of tribunal," id., as the f.n.c. determination generally is made well before a court begins to address the merits of a claim.

For this latter reason, our decision is perfectly consistent with Costello.  An f.n.c. dismissal is more akin to an initial bar to a court's decision on the substance of a claim than to a situation in which the defendant has first incurred the inconvenience of preparing to meet the merits of the case.  See Costello, 365 U.S. at 286.  Thus, under Costello's formulation, an f.n.c ruling is the type of rule 41(b) dismissal that is "not provided for" in the rule but nevertheless does not operate as an adjudication "on the merits" of the entire claim.[5]

_____

[5]     Weissinger v. United States, 423 F.2d 795 (5th Cir. 1970) (en banc), is not controlling here, as it involved an interpretation of three sentences in
(continued...)

12

We reconcile our decision in this case with the language of rule 41(b) by noting that the f.n.c. dismissal does carry some preclusive effect and is, in fact, "on the merits" as provided for in the rule: It is an adjudication "on the merits" of the f.n.c. issue itself. The plaintiffs' attempt to litigate their claims in a federal court in Texas was dismissed "with prejudice" insofar as they chose a federal court in Texas as their forum. It would be unwarranted to hold further that this judgment constitutes the basis for an injunction against a separate, state court proceeding.

The Supreme Court has held that a federal ruling on the f.n.c. issue does not serve to bind a state court, even in the same state. In the case at issue, a Texas federal court had dismissed without prejudice on f.n.c. grounds. The plaintiff then attempted to file suit in Texas state court. This court upheld an injunction against the state proceeding. Exxon Corp. v. Chick Kam Choo, 817 F.2d 307 (5th Cir. 1987), rev'd, 486 U.S. 140 (1988). In reversing, the Court noted that "whether the Texas state courts are an appropriate forum for petitioner's Singapore law claims has not yet been litigated, and an injunction to foreclose consideration of that issue is not within the relitigation exception." 486 U.S. at 149. Thus, the only issue that the federal district court had decided

(...continued)
rule 41(b) that since have been deleted. Those provisions allowed for a directed verdict in non-jury cases. At that time, FED. R. CIV. P. 50 covered only jury trials. Thus, the rule 41(b) dismissal in Weissinger was made after a "full-blown trial" and following "lengthy and careful findings of fact and conclusions of law." 423 F.2d at 798. Weissinger entailed, at that time, a dismissal that, in effect, fell under what we earlier have referred to as the first category of dismissals. Thus, both Weissinger and our holding today are consistent with Costello.

13

was whether the claims should be dismissed under the <u>federal</u> f.n.c. doctrine.  <u>Id.</u> at 148.

The instant case and <u>Chick Kam Choo</u> are similar, with the exception that in the present case the dismissal was designated as "with prejudice."[6]  Functionally, however, these two cases are equivalent.[7]  The dismissal in both cases was made because the plaintiffs had chosen a forum that, while proper, was "inconvenient." As noted above, the limited nature of the f.n.c. ruling cannot serve to bar the plaintiffs' claims forever from U.S. courts.[8]

V.

Plaintiffs' tactics in manipulating fora in this case are "repugnant," as the district court properly observed, but they are permitted by the law that we must follow.  Certainly, defendants contemplated that they would be subject only to a suit in the Philippines following the f.n.c. dismissal.  The State of Louisiana is free, however, to formulate its laws as it sees fit within the

[6]     We note that the words "with prejudice" and "without prejudice" are not used in rule 41.

[7]     The district court, which entered both the dismissal on f.n.c. grounds and the order that is now appealed, indicated in that latter order that because Louisiana does not recognize the principle of f.n.c., "no conduct [by plaintiffs] is exposed that violates this court's final judgment." Moreover, the court referred to the earlier final judgment as "addressing the forum non conveniens issue."  Plainly, the court never contemplated that its dismissal "with prejudice" was as to plaintiffs' claims, as opposed to the f.n.c. issue only.  Thus, plaintiffs' attorneys here are saved from their failure timely to appeal the "with prejudice" ruling.

[8]     Thus, contrary to defendants' argument, the issue-preclusive and "law of the case" effects of the f.n.c. ruling in this case cannot extend to state court.

14

bounds of the Constitution. Under <u>Chick Kam Choo</u>, it is Louisiana's prerogative to choose not to recognize the doctrine of f.n.c. in its own courts. It would be improper for this court to preclude plaintiffs from pursuing their claims in Louisiana state court based solely upon a prior federal court dismissal on f.n.c. grounds.

Accordingly, the judgment of the district court, refusing to issue an injunction, is AFFIRMED.

15

EMILIO M. GARZA, Circuit Judge, with whom SMITH, Circuit Judge, and STAGG,[9] District Judge, join, specially concurring:


After a careful and searching review of both the record and the relevant case law, I conclude that I must concur in the majority opinion. I write separately to emphasize this Court's disdain for the tactics employed in this case. During this litigation, the plaintiffs' attorneys hid the ball, the defendants' attorneys dropped the ball, and the courts were left holding the bag.

One year prior to filing suit in Texas state court, plaintiffs filed an essentially identical suit in Louisiana state court, with instructions to "please withhold service at this time." The Louisiana suit was apparently a back-up suit, designed to ensure that plaintiffs would have a forum for their claims in the United States in the event they were unable to maintain their suit in Texas. To protect the Louisiana suit from interference, the plaintiffs made no statements concerning the lawsuit's existence, keeping the suit "secret" until 1991. Only after we remanded the case in *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540 (5th Cir.), *cert. denied*, 502 U.S. 963, 112 S. Ct. 430, 116 L. Ed. 2d 449 (1991) ("*Baris I*") did the plaintiffs raise the possibility of the Louisiana suit being affected by the proceedings in Texas federal court, and then only in passing. Had the district court been fully

---

[9] Judge Stagg reluctantly joins the special concurrence. He is of the opinion that the underlying case should be tried in the Philippines and nowhere else.

16

aware of the contents of the Louisiana suit, it may have ruled differently. Instead, the plaintiffs continued their charade, imploring this Court and the district court to make sure they had an adequate and available foreign forum before dismissing their Texas action. The federal courts dutifully adjudicated this issue, and the district court ultimately required the defendants to be amenable to suit in the Philippines.

Having successfully hidden the Louisiana suit, however, plaintiffs are now allowed to pursue essentially the same claims in both Louisiana and the Philippines, and the defendants have no defense against being subjected to suit in both places. We find plaintiffs' manipulation of fora in this case deplorable. We expect attorneys, as officers of the court, to be more forthright in their actions before the courts. Instead, these attorneys chose to manipulate the courts, wasting our valuable time and energy.[10]

The defendants, however, are not blameless here either. According to the record, at least some of the defendants discovered the Louisiana suit as early as 1990. In 1991, we, without knowing the contents of the Louisiana suit, mentioned it in a footnote in *Baris I*. *Baris I*, 932 F.2d at 1549 n.13. Further, the plaintiffs gave the suit cursory treatment in their brief to the district court before its second dismissal for *forum non conveniens*. Yet at

---

[10] Further, we note that once the defendants filed their petition to remove the Texas suit to federal court, the plaintiffs neglected to move to remand within thirty days. As a consequence, we concluded that the district court had jurisdiction, without having to decide whether a Death on the High Seas Act claim is removable. *See Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1543 & n.3 (5th Cir.), *cert. denied*, 502 U.S. 963 (1991) ("*Baris I*").

17

no time prior to seeking this injunction did the defendants specifically raise the issue of the Louisiana suit before the district court. It is true that Caltex was not served until 1993, but they were aware of the suit in 1991 at the latest, prior to the district court's second *forum non conveniens* dismissal. The defendants should have brought the suit to the attention of the district court. Whether their decision to remain silent was an oversight or a miscalculated tactical decision we do not know. The result however, is that the defendants are now subject to suit in both Louisiana and the Philippines, and much judicial time and energy have been wasted.

The district court did not have sufficient information necessary to make a proper ruling in the Texas litigation. It is the lawyers' responsibility to supply the courts with this information. Without such forthrightness, justice suffers. It did so here.