# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2008

Charles R. Fulbruge III
Clerk

No. 07-30833

---

BLANCHARD 1986, LTD., TORTUGA OPERATING CO., TORTUGA
INTERESTS, INC., JOHN E. HINE, and PETER L. TURBETT

Plaintiffs - Appellants

TEXACO EXPLORATION & PRODUCTION CO., and LINDER OIL CO.

Intervenors - Plaintiffs - Appellants

v.

PARK PLANTATION, LLC, NANCY BLANCHARD, and NANCY
BLANCHARD AS INDEPENDENT EXECUTRIX ON BEHALF OF BETTY
D. BLANCHARD

Defendants - Appellees

PAUL MACLEAN

Third Party Defendant - Appellee

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before HIGGINBOTHAM, STEWART, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We review in this case the district court's dismissal of a lawsuit that sought to enjoin on-going Louisiana state court proceedings. Appellants contend the district court had ancillary subject matter jurisdiction to effectuate the

decisions of an earlier federal court and should have enjoined the state court suit under the "relitigation exception" of the Anti-Injunction Act.[1] We affirm the district court's decision to deny an injunction because we find discretion counsels against intermeddling in the state court proceedings.

I

This suit continues lengthy litigation over a mineral lease. Betty and Nancy Blanchard own 547.59 acres in Louisiana which has been leased to Appellants or their predecessors since 1942. In 1986, the Blanchards brought a suit in Louisiana state court seeking cancellation of the lease due to the lessees' failure to perform ("Blanchard I"). The parties entered into a settlement agreement in 1996, under which the lease was amended and Betty Blanchard granted Appellants a purchase option on 150 acres of the leased tract, exercisable upon the Blanchards' assertion of any claim of environmental damage to the property or upon the transfer of the property.

Following settlement the lease continued, but differences remained. In 2001, Park Plantation LLC, the corporation that had meanwhile been formed by Nancy Blanchard to hold the leased land, sued the Appellants again, this time in federal district court ("Blanchard II"). The claims in the suit came in two counts. First, the suit sought cancellation of the 1996 settlement agreement alleging that Betty Blanchard had not knowingly agreed to the terms of an agreement that was vague and ambiguous. Second, the suit claimed Appellants breached the lease, as modified by the settlement agreement, by failing to drill an 8,000 foot well within one year of the settlement. The district court, adopting the report and recommendation of the magistrate judge, dismissed the suit with prejudice. This court affirmed.[2] The lease continued on.

---

[1] 28 U.S.C. § 2283.

[2] Park Plantation LLC v. Blanchard, et al., 71 Fed. App'x 441, 2003 WL 21418102 (5th Cir. 2003).

Unsatisfied, Nancy Blanchard and Park Plantation sued again in 2004, this time back in a Louisiana state court and claiming, among other claims, environmental damages and waiver of the settlement agreement's purchase option ("Blanchard III"). Appellants responded with a plea of res judicata, pointing to the Blanchard II federal district court suit. The state court rejected the bar, reasoning both that Blanchard II was dismissed for lack of subject matter jurisdiction and that the instant claims did not arise out of the same transaction or occurrence at issue in the federal suit. In response, over 22 years after the initiation of litigation between these parties, Appellants filed this action in federal district court ("Blanchard IV") seeking to enjoin the on-going state court suit. A federal district court dismissed the lawsuit and refused to issue the injunction. We now review de novo on appeal.[3]

## II

The Anti-Injunction Act generally bars federal courts from granting injunctions to stay proceedings in state courts. However, the Act includes three exceptions under which a federal court may enjoin state court proceedings in limited circumstances:

> A Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.[4]

The last of the three exceptions listed in the statute, termed the "relitigation exception," permits an injunction where necessary to "prevent state litigation of an issue that previously was presented to and decided by the federal court."[5] The

---

[3] See New York Life Ins. Co. v. Gillispie, 203 F.3d 384, 386-87 (5th Cir. 2000) ("The only issue before the Court is the proper scope and application of the relitigation exception to the Anti-Injunction Act. Our review is therefore de novo.").

[4] 28 U.S.C. § 2283.

[5] Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988).

exception is "founded in the well-recognized concepts of res judicata and collateral estoppel," but is "strict and narrow," requiring that "the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court."[6] The exception permits, but does not mandate, that federal courts enjoin duplicative state court proceedings.[7]

## A

The nature of this case causes us to pause and consider that an injunction, even where allowed by the letter of the relitigation exception,[8] remains permissive at the discretion of the federal court, which discretion should be "exercised in the light of the historical reluctance of federal courts to interfere with state judicial proceedings."[9] As Justice Black remarked in Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,[10] the Anti-Injunction Act's "prohibition" of injunctions against state court proceedings is grounded in federalism and "rests

---

[6] Chick Kam Choo, 486 U.S. at 147.

[7] Id. at 151.

[8] The Supreme Court's opinion in Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518 (1986) does not preclude an injunction in this case. There, the Court construed the Full Faith and Credit Act, 28 U.S.C. § 1738, to limit the relitigation exception "to those situations in which the state court has not yet ruled on the merits of the res judicata issue." Parsons Steel, 474 U.S. at 524. No federal injunction of a state proceeding may issue "once the state court has finally rejected a claim of res judicata." Id. We apply state law to determine when a ruling is "final." See Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc., 448 F.3d 825, 828 (5th Cir. 2006).

Here, the Louisiana state court held in a pretrial order that res judicata did not apply, in part because it found that the Blanchard II federal court dismissed the claims for lack of jurisdictional standing. The Louisiana Fifth Circuit Court of Appeals in turn refused a writ to review the interlocutory order. Both a denial of a peremptory exception of res judicata by a Louisiana trial court and a denial of writs of review by a Louisiana appellate court are interlocutory as opposed to final judgments under Louisiana law. Both judgments are also subject to further review at later stages of the proceedings. Thus, the Full Faith and Credit Act does not foreclose a federal injunction, if appropriate under the relitigation exception, because the Louisiana state courts have not "finally rejected a claim of res judicata."

[9] Southern Cal. Petroleum Corp. v. Harper, 273 F.2d 715, 718 (5th Cir. 1960).

[10] 298 U.S. 281 (1970).

on the fundamental constitutional independence of the States and their courts." This Circuit, recognizing that these issues of federal and state comity remain equally at play in the relitigation exception as in the rule itself, has stated:

> We take the view that a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings. If we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res adjudicata and collateral estoppel.[11]

The power to curtail duplicative litigation in this case exists directly in the Louisiana state courts through the well-developed doctrines of res judicata and collateral estoppel. In light of the state's power, we should not wield the extraordinary equitable remedy of a federal injunction without a "strong and unequivocal" showing of relitigation. That inquiry, however, is complicated by the fact that there is disagreement over the precise reach of the relitigation exception's protections; whether it resembles issue preclusion, claim preclusion, or a hybrid of the two.[12] In light of the nebulous standard, on our reading of the

---

[11] Harper, 273 F.2d at 719.

[12] In Parsons Steel, the Supreme Court declined to consider whether the relitigation exception allows injunctions based on res judicata "where the later state action involves claims that could have been litigated, but were not actually litigated, in the prior federal action." 474 U.S. at 526 n.4. Currently, there is disagreement amongst the circuits regarding the scope of the relitigation exception; and this circuit has given conflicting signals as to its position on the issue. Most circuits that have considered the issue strictly interpret Chick Kam Choo's "actually decided" language as "mak[ing] clear that the part of the relitigation exception to the Anti-Injunction Act that is based on concerns of res judicata is more narrowly tailored than the doctrine of res judicata." Staffer v. Bouchard Transp. Co., 878 F.2d 638, 643-44 (2d Cir. 1989); see, e.g., Jones v. St. Paul Cos., 495 F.3d 888, 892-93 (8th Cir. 2007); Am. Town Ctr. v. Hall 83 Assocs., 912 F.2d 104, 112 n.2 (6th Cir. 1990); Delta Air Lines, Inc. v. McCoy Rests., Inc., 708 F.2d 582, 585-87 (11th Cir. 1983). Under this interpretation, the exception only protects from relitigation matters actually decided, not matters that could have been brought and decided in previous federal litigation. See Staffer, 878 F.2d at 643-44. The Fifth Circuit has endorsed this position, stating that an injunction that rests on true res judicata, a doctrine broadly barring any claims that are part of the same transaction or series of transactions raised in a previous action, "appears to be inconsistent with Chick Kam Choo's admonishment that the relitigation exception 'is strict and narrow' so that only 'claims or issues which . . . actually

Blanchard II judgment and the Blanchard III pleadings, it is not unequivocally clear that Blanchard III raises issues already decided by the Blanchard II court.

We note, however, that this is not because the Blanchard II court dismissed the suit for lack of constitutional standing, as the district court and the Louisiana state courts have found, and with which we disagree. Based on our reading of the magistrate's report, the Blanchard II court reached the merits in dismissing both the breach of contract claim and the rescission claim. Although the report stated as to the rescission claim that "Park lacks standing to void the settlement agreement," that statement pertained to "statutory standing," not Article III standing. The magistrate's report reasoned that Park lacked standing because under the elements of Louisiana's relative nullity jurisprudence, it was not authorized to sue; relative nullity "may be invoked only by those persons for whose interest the ground for nullity was established."[13] Because Park was not in existence when Betty Blanchard entered into the settlement agreement, it could

---

have been decided' in the prior proceeding . . . are protectable thereunder." Tex. Employers' Ins. Assoc. v. Jackson, 862 F.2d 491, 501 (5th Cir. 1988) (en banc). Accordingly, the Jackson court would limit the reach of the relitigation exception to situations where a state suit's claims are precluded under a collateral estoppel theory, which bars relitigation of issues actually determined and litigated in a prior suit. Id. at 500-01.

The Ninth Circuit, however, expressly disagrees, holding that the relitigation exception applies "whenever res judicata would bar relitigation of a claim." Western Sys., Inc. v. Ulloa, 958 F.2d 864, 868 (9th Cir. 1992). The Ulloa court rejected limiting the relitigation exception to issues "actually litigated" because to do so "would in essence be to read res judicata entirely out of [the relitigation exception,]" as any issues "actually litigated" would fall under the bar of collateral estoppel. The Fifth Circuit, despite its earlier endorsement in Jackson of the "actually litigated" standard, has more recently gravitated towards the Ninth Circuit's position by employing a transactional test in relitigation exception cases, asking whether the two claims are based on the same nucleus of operative fact. See New York Life Ins. Co. v. Gillispie, 203 F.3d 384, 387 (5th Cir. 2000); Assurance Co. of Am. v. Kirkland, 312 F.3d 186, 189 n.8 (5th Cir. 2002). Such a test is traditionally associated with the doctrine of res judicata, and its preclusive effect potentially extends beyond claims actually litigated to claims that could have been litigated. See Nevada v. US, 463 U.S. 110, 131 n.12 (1983); Agrilectric Power Partners, Ltd. v. General Electric Co., 20 F.3d 663, 665 (5th Cir. 1994); Restatement (Second) Judgments § 24(2).

[13] LA. CIV. CODE ANN. Art. 2031.

not bring a relative nullity claim. This question of whether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question, affecting statutory standing, not a jurisdictional question, affecting constitutional standing. In the words of the Supreme Court, once a plaintiff has suffered sufficient injury to satisfy the "case and controversy" requirement of Article III, "jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."[14] Thus, the district court dismissed the rescission claim under Fed. R. Civ P. 12(b)(6) for failure to state a claim upon which relief can be granted, and not Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. The Blanchard II judgments, therefore, have preclusive effect.[15]

Even considering this preclusive effect, it is not clear at this stage of the Blanchard III proceedings that the case involves issues already decided in Blanchard II. For instance, while both Count Two in Blanchard III and the rescission claim in Blanchard II question the validity of the Appellants' purchase option, the claims measure the option's validity at different times and against different standards. In Blanchard II, the district court dismissed the Appellees' rescission claims by focusing on the time of formation and found that there was no error in the settlement's formation, that the settlement was not in contravention of public policy, that a rescission claim was prescribed, and that Park lacked statutory standing. Count Two, in contrast, challenges the purchase

---

[14] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

[15] Dismissals for lack of jurisdiction "are not considered adjudications on the merits and ordinarily do not, and should not, preclude a party from later litigating the same claim, provided that the specific defect has been corrected." Baris v. Sulpicio Lines, Inc., 74 F.3d 567, 571 (5th Cir. 1996) (citing WRIGHT, MILLER & COOPER FED. PRAC. & PROC. § 4436). Dismissals with prejudice for failure to state a claim, on the other hand, are "decision[s] on the merits and essentially end[] the plaintiff's lawsuit." Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977).

option from the angle of whether it was waived through inaction following events that gave Appellants the right to exercise the option. They are different claims focusing, at least based on the initial state court pleadings, on different issues. As the claims unfold, the state court will be in a better position to consider collateral estoppel and res judicata.

Declining an injunction as a matter of discretion is also appropriate here because of the nature of this case. Over the past twenty years, these parties have engaged in protracted litigation which started in Louisiana state courts, which turns on Louisiana causes of action, and which involves Louisiana land. This is a long-running state dispute, with only a single appearance in federal court, and the Louisiana courts are more familiar with the issues the case presents.[16] Preventing duplicative litigation could potentially shorten this carousel ride of litigation; but, the power to effectuate federal judgments is not uniquely federal and is best left to the state courts in this state dispute.

Accordingly, the mere possibility that previously-decided issues may resurface in Blanchard III does not justify reversing the district court's refusal to enjoin the state court. It is possible that none of the judgments of Blanchard II will be raised in the adjudication of the claims brought in Blanchard III. We leave it to the state court to recognize and decide, as the claims in Blanchard III unfold, whether that remains the case. AFFIRMED.

---

[16] Compare Western Systems, Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992) (affirming an injunction of state proceedings in a case that had been litigated in federal court for seventeen years).