Rebecca **DERMINER,** Elizabeth Derminer, Robin Derminer, and Amy Vallandi, Plaintiff,

v.

Wayne & Margaret **KRAMER,** Michael & Angela Davis, Dennis Thompson, Muscletone Records, Inc., and Svengirly Music, Inc., Defendant.

No. CIV. 04–74942.

United States District Court, E.D. Michigan, Southern Division.

Nov. 22, 2005.

Michael A. Lisi, Honigman, Miller, Bingham Farms, MI, Norman C. Ankers, Michael P. Hindelang, Honigman, Miller, Detroit, MI, for Plaintiff.

Deborah J. Swedlow, J. Michael Huget, Butzel, Long, Ann Arbor, MI, for Defendant.

**OPINION AND ORDER DENYING RECONSIDERATION AND MOTION FOR ATTORNEY'S FEES**

FEIKENS, District Judge.

Plaintiffs move for reconsideration of my Opinion and Order of September 8, 2005 (386 F.Supp.2d 905) dismissing the Complaint for lack of jurisdiction, or in the alternative, move for permission to amend their Complaint. The essence of their argument is that my Opinion and Order failed to address the claim of trademark dilution under 15 U.S.C. § 1125(c), which provides the requisite federal question as a basis for federal jurisdiction. As explained below, because I find an owner cannot bring claims of trademark dilution against a co-owner, I find I still lack jurisdiction to hear the case. Moreover, because amendment to the Complaint would be futile, I DENY Plaintiffs' motion.

In addition, Defendants move for attorney's fees and costs for this case. As explained below, I find such an award un-justified given the Complaint, and DENY Defendants' motion.

**I. Motion for Reconsideration**

*A. Allegations in the Complaint*

The Complaint alleges that "Defendants have repeatedly infringed upon and permitted others to infringe upon Derminer's trademark in the 'MC5' trademark or failed to account to Derminer for revenues associated with the trademark by, among other things, utilizing the 'MC5' trademark in the DVD 'Sonic Revolution: A Celebration of the MC5' and authorizing the use of the trademark in posters and on merchandise." (Compl.¶ 22.) Plaintiffs did not allege any additional facts in the count for trademark dilution, stating only that "Defendants' actions have caused a dilution in the distinctive quality of the 'MC5' trademark." (Compl.¶ 30, 31.) Therefore, I note that by the language of the Complaint, Defendants were only put on notice that their use of a single trademark was at issue.

In this motion, although Plaintiffs continue to argue that Defendants diluted the "MC5" trademark by using it to advertise Defendants' band, that is no longer their only argument. (Pls.' Mot. for Recons., 5.) Plaintiffs now argue Defendants' use of a second mark, "DKT/MC5," dilutes the MC5 trademark, and this would presumably be the amendment they would make to their pleading. (*E.g.* Pls.' Reply, 3.) Thus, in analyzing the legal questions before me, I have considered the argument as to both marks to support a finding that amendment of the Complaint would be futile. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir.1986) (motion for leave to amend may be denied for futility "if the court concludes that the pleading as amended could not withstand a motion to dismiss.")

### B. Trademark Dilution Statute

■ In order to discern whether or not Congress intended to give federal courts the jurisdiction to hear a dispute regarding alleged trademark dilution by a co-owner,[1] I must begin by analyzing the language of the statute. *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). If the language of the statute is unambiguous, the plain meaning of the text must be enforced. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The trademark dilution cause of action takes its root in 15 U.S.C. § 1125(c)(1). It reads: "The owner of a famous mark shall be entitled [...] to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the famous mark." The provision then goes on to list the factors a court may consider, one of which reads: "the degree of recognition of the mark in the trading areas and channels of trade of the mark's owner and the person against whom the injunction is sought." 15 U.S.C. § 1125(c)(1)(F). The plain language of these provisions appears to me to distinguish between "the mark's owner" and the person against whom an action may be brought. In other words, by the language of the statute, there are two classes of parties: owners of marks, and "another person." Thus, I believe the language of the statute makes clear that Congress never intended to create a trademark dilution cause of action between owners. Further underscoring this point, the Act uses the broader designation "any person" in 15 U.S.C. § 1125(a)(1) (not the narrower designation "another person"). It is this broader designation that courts have found is entitled to protect individuals "whether or not they are owners of the mark." *D.M. & Antique Import Corp. v. Royal Saxe Corp.*, 311 F.Supp. 1261, 1268 (S.D.N.Y.1969).

■ Therefore, I find that under the plain meaning of the statute, an action between co-owners of a trademark for dilution of that mark under 15 U.S.C. § 1125(c) is not permitted. Like an action for trademark infringement by a co-owner, the claim is best understood as an action for an accounting that arises under state contract law, not under the Lanham Act. Although this finding alone is sufficient to base my conclusion that I lack jurisdiction over this action, I will briefly address the case law Plaintiff cites for its argument that such an action is permitted.

### C. Case Law Regarding Trademark Dilution

Plaintiff relies heavily on the case of *R.L. Polk & Co. v. INFOUSA, Inc.*, arguing that it shows federal courts have jurisdiction over trademark cases in which one party creates a new mark that has as a component the shared mark. 230 F.Supp.2d 780 (E.D.Mich.2002), *aff'd*, 94 Fed.Appx. 305 (6th Cir.2004) (adopting the reasoning of the district court). In *Polk*, the plaintiff signed an assignment agreement for the mark "Polk City Directory," and the assignee used the name "Polk," "Mr. Polk," and "Polk Directories." *Id.* The assignment agreement provided that the defendant "did not acquire any rights in the 'Polk' mark separately or apart from its use as part of the mark." *Id.* at 782. The *Polk* opinion did not directly address

---

1. I have not found, and neither side has identified, a precedent directly addressing the question of whether an owner can bring an action for trademark dilution against a co-owner of the mark in question.

the circuit split as to jurisdiction over infringement claims, nor was it a dilution case. 230 F.Supp.2d at 782.

Plaintiff's case is factually distinct from *Polk*. First, in *Polk*, an assignment agreement limited the ownership rights in the mark that were received. Thus, an action for infringement could lie, because not all the ownership rights in the original trademark were held by Defendant. Here, there was no such limiting agreement, and both parties have used "MC5" independently.[2] Second, in *Polk*, the defendant was not using a mark in which it had the rights and adding other material to it; it was using a portion of a mark that it had no right to subdivide. Here, accepting Plaintiff's allegations as true, Defendants added the appellation "DKT" to the mark they owned all usage rights to, the MC5 mark. *Polk's* factual differences created a question under the Lanham Act that is absent in this case, because here, Defendants are owners of all rights associated with the mark, and their use of it cannot be dilution under the statute's language.

The second case Plaintiff relies on is *Durango Herald, Inc. v. Riddle*, 719 F.Supp. 941 (D.Col.1988). *Durango* also did not include a claim of trademark dilution (only infringement and trade dress infringement). Like *Polk*, it is a case in which the parties had a contractual agreement, in this case a joint venture agreement, that governed the terms of use of the trademark at issue. One of those provisions forbade either party from competing with the joint venture in its service

area. *Id.* at 944. One of the parties to the joint venture began to use the trademark in competition with the joint venture. *Id.* Therefore, like *Polk*, *Durango* is distinct from this case in that the owners had a contractual agreement that modified their rights to use the mark, and the allegation was that the defendant had violated that agreement and was therefore infringing the mark.

Neither of these two cases is applicable to the case at bar, because neither answers the question: can an owner of a trademark sue his co-owner for trademark dilution under the Lanham Act, *absent* an agreement limiting his co-owner's rights to use the mark? My reading of the statute's language says no; nothing in the case law contradicts that answer. There is no alleged agreement in this case governing the use of the marks, and therefore this action cannot be brought under the Lanham Act.

### D.   *Conclusion—Motion to Reconsider*

This finding is supported by the statute's own language, but it also follows logically from the general understanding of trademark infringement. An owner does not infringe upon his co-owner's rights in a trademark by exercising his own right of use. Likewise, he does not dilute those rights by exercising his own right of use. These legal claims are properly understood as an action for an accounting arising under state law. Without a federal law cause of action or diversity in this case, I do not have jurisdiction to hear it, and it does not appear Plaintiffs'

---

**2.** Plaintiffs state that "[t]his Court can rest assured that if *plaintiffs* had used the mark 'MC5' to try to promote record sales of some completely different band [ . . . ] defendants would be before this Court complaining about acts of trademark dilution" (emphasis in original). Plaintiff Rebecca Derminer's sworn testimony is that Plaintiffs' decedent did use the works and MC5 mark without his co-

owners permission, never accounted to Defendants for that use, and yet was never sued by Defendants for trademark dilution. (May 6, 2005 Hearing Tr., 16 and 21.) Plaintiffs' counsel appears fond of unsupported rhetorical flourishes. *See also Derminer v. Kramer*, 386 F.Supp.2d 905, 911 n. 10 (E.D.Mich. 2005). I am not.

amendment would cure that defect. Accordingly, Plaintiffs' motion is DENIED.

## II. Motion for Attorney's Fees

■ Defendants move for attorney's fees and costs, in part based on the argument that Plaintiffs' claims were frivolous and objectively unreasonable. Although the parties disagree about whether this motion can be brought and the proper standard, I do not need to decide these questions, as I find there is little to support the contention that these claims were either frivolous or objectively unreasonable.

I have not ruled on the merits of any of the claims, merely on whether I have jurisdiction to hear them. Plaintiffs did present registration certificates for most of the copyrights at issue (and all of the copyrights listed in the Complaint), thus clearing the statutory jurisdictional hurdle for copyright infringement. Both sides concede Plaintiffs have an ownership interest in the MC5 mark. My finding that no federal cause of action existed, but that the infringement claims were properly understood as a state law action for an accounting, involved choosing one side of a split among federal courts. As I discussed above, the question of whether a trademark dilution claim can be brought under the Lanham Act by one owner against another owner (absent an agreement restricting the parties' rights) is one of first impression. Given this, it was reasonable for Plaintiffs to bring this case in federal court. The motion for attorney's fees and costs is DENIED.

## CONCLUSION

Plaintiffs' motion is DENIED. Defendants' motion for attorney's fees and costs is DENIED. **IT IS SO ORDERED.**