# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30471

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2016

Lyle W. Cayce
Clerk

LARRY NAQUIN, SR.,

     Plaintiff

v.

ELEVATING BOATS, L.L.C.,

     Defendant-Third Party Plaintiff - Appellant

v.

STATE NATIONAL INSURANCE COMPANY,

     Third Party Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

In this insurance coverage dispute, Elevating Boats, LLC ("EBI") appeals a summary judgment in favor of State National Insurance Company ("SNIC"). For the reasons outlined below, we **AFFIRM** the district court.

No. 15-30471

## I.

This appeal flows directly from a previous decision by this court. In that matter, Larry Naquin was using an EBI land-based crane to relocate a test block when the pedestal of the crane snapped, causing the crane to topple over. *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 931 (5th Cir. 2014). Upon jumping from the crane house, Naquin sustained a broken left foot, a severely broken right foot, and a lower abdominal hernia. *Id.* Naquin's cousin's husband, another EBI employee, was crushed by the crane and killed. *Id.* Despite reparative surgeries and physical therapy sessions, Naquin was unable to return to physical work. *Id.*

Naquin subsequently sued EBI pursuant to the Jones Act, and the suit proceeded to trial. *Id.* After a three-day trial, a jury concluded that Naquin was a Jones Act seaman and that EBI's negligence caused his injury. The jury subsequently awarded Naquin $1,000,000 for past and future physical pain and suffering, $1,000,000 for past and future mental pain and suffering, and $400,000 for future lost wages. *Id.* EBI appealed, challenging, among other things, the grant of Jones Act seaman status to Naquin and the sufficiency of evidence to establish EBI's negligence. *Id.* at 932.

Pertinent to this appeal, the *Naquin* majority[1] affirmed the jury's verdict as to liability, concluding that the jury correctly determined that Naquin qualified as a Jones Act seaman; the entire panel, though, agreed that EBI acted negligently in failing to provide a reasonably safe work environment and work equipment. *Naquin*, 744 F.3d at 932–38. Specifically, as to the negligence inquiry, we held: "EBI was the only party responsible for welding the LC-400

---

[1] The *Naquin* panel consisted of Circuit Judges Davis and Jones and District Court Judge Milazzo. Judge Jones dissented, "concur[ring] in all of th[e] good opinion except the decision affirming Naquin's status as a seaman." *Naquin*, 744 F.3d at 941. By her estimation, Naquin was not a Jones Act seaman because he failed both the duration and nature components of the test outlined by the Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995).

crane to its base, a weld which was indisputably defective and the direct cause of Naquin's injuries." *Id*. at 937. We, however, vacated the verdict as it related to damages and remanded the matter to the district court to conduct a new trial on that specific issue. *Id.* at 938–41.

The district court subsequently granted EBI leave to file a third-party complaint against its insurance companies, SNIC and Certain London Insurers ("London Insurers"). In its third-party demand, EBI complained that both SNIC and London Insurers breached their insurance contracts by denying EBI's insurance claims arising from Naquin's accident and by failing to provide EBI with defense and indemnity. EBI, in connection to its claims, also sought statutory bad-faith damages pursuant to Louisiana Civil Code 1997 and Louisiana Recording Statute 22:1973. The district court granted a motion to sever, ordering that EBI's claims against SNIC and London Insurers be severed from the remaining issue of damages and resolved by a separate trial.

SNIC moved for summary judgment, asserting, chiefly, that EBI was not entitled to coverage under its Protection & Indemnity Policy (the "Policy") because coverage did not extend to Naquin's land-based incident and that EBI failed to comply with the notice requirements imposed by the Policy. EBI responded in opposition, explaining that it was entitled to indemnity under the "any casualty or occurrence" language of the Policy. The remaining opposition to SNIC's summary judgment motion concerned EBI's perceived lack of actual notice. Upon consideration of both parties' arguments, the district court granted summary judgment to SNIC. Thereafter, the district court entered final judgment in favor of SNIC, and later denied EBI's Rule 59(e) Motion to Reconsider.

## II.

We consider only whether the district court erred in granting summary judgment to SNIC on the grounds that the Policy did not cover EBI's liability

for Naquin's incident and that SNIC, therefore, exhibited no bad faith in denying coverage. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). Because the proper interpretation of an insurance policy presents a legal question, not a factual one, the district court's interpretations of the Policy are also reviewed de novo. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 878 (5th Cir. 2009).

A. <u>Scope of Coverage</u>

The "Indemnity" provision of the Policy at the heart of this appeal, provides:

> Subject to all exclusions and other terms of this Policy, the Underwriters agree to indemnify the Assured for any sums which the Assured, *as owner of the Vessel*, shall have become liable to pay, and shall have paid in respect of *any casualty or occurrence* during the currency of the Policy, but only in consequence of any other matters set forth hereunder . . .

(emphasis added). The district court interpreted this critical language as excluding coverage to EBI due to the circumstances surrounding its liability in *Naquin*. We endorse this interpretation.

In the absence of a specific and controlling federal maritime rule over this dispute, we interpret this maritime insurance contract under Louisiana state law. *See Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991). Under Louisiana law, "an insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code." *First Am. Bank v. First*

No. 15-30471

*Am. Transp. Title Ins. Co.*, 585 F.3d 833, 837 (5th Cir. 2009); *see also Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).

Words and phrases used in an insurance policy should be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *Cadwallader*, 848 So. 2d at 580; *Carbon v. Allstate Ins. Co.*, 719 So.2d 437, 439–40 (La. 1998). Thus, when the words of the insurance contract "are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written." *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2004) (citing La. Civ. Code Ann. art. 2046). A contractual "provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective," so as to avoid rendering any provision in the contract superfluous. La. Civ. Code Ann. art. 2049; *Berk-Cohen Assocs., LLC v. Landmark Am. Ins. Co.*, No. 07-9205, 2009 WL 3738152, at *3–4 (E.D. La. Nov. 5, 2009). The provisions of the contract "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code Ann. art. 2050; *First Am. Bank*, 585 F.3d at 837.

As relevant here, SNIC avers that the terms of the subject Policy—specifically, the "as owner of the Vessel" clause—does not provide coverage for the land-based incident due to EBI's negligence as described in *Naquin*. Before the district court, EBI urged a blanket reading of the Policy that would provide coverage for "any casualty or occurrence" for which EBI might become liable.[2]

---

[2] We note that EBI's arguments on appeal evince a marked departure from those argued in opposition to summary judgment before the trial court. It is the record before the district court that we consider on this appeal. *See Offshore Drilling Co. v. Gulf Copper & Mfg. Corp.*, 604 F.3d 221, 226 (5th Cir. 2010) ("We will not consider an argument asserted for the first time on appeal."); *see also LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

No. 15-30471

We are persuaded, guided by the law and facts before us, that EBI's strained interpretation of the Policy is unreasonable in this context. *See* La. Civ. Code Ann. art. 2050; *First Am. Bank*, 585 F.3d at 837. We, therefore, follow the district court in holding that there is no genuine issue that the scope of coverage of the Policy does not extend to EBI's liability for the *Naquin* incident. In reaching this conclusion, we decline EBI's invitation to read the provision in the piecemeal fashion that it prefers—a construal that would directly contradict the well-established Louisiana rules regarding contractual interpretation. *See Foret v. La. Farm Bureau Cas. Ins. Co.*, 582 So. 2d 989, 991 (La. App. 1 Cir. 1991) ("An insurance contract must be construed as a whole; one section is not to be construed separately or at the expense of disregarding other sections."). The only way to give meaning to both provisions of the Policy is to construe the Policy as limiting coverage to "any casualty or occurrence" which arises out of EBI's conduct "as owner of the Vessel."

Moreover, our holding is required under our precedent. *See Lanasse v. Travelers Ins. Co.*, 450 F.2d 580 (5th Cir. 1971). In *Lanasse*, the plaintiff was injured when the operator of a platform owned by Chevron allowed a welding machine to swing against the vessel's railing. *Id.* at 582. Chevron claimed, in part, that its liability was covered under the terms of a standard P&I Policy. *Id.* at 583. Chevron, the *Lanasse* court reasoned, "was found at fault for the manner in which the crane was operated. The vessel offered nothing further than a condition or locale for the accident." *Id.* at 584. As we explained:

> *There must be at least some causal operational relation between the vessel and the resulting injury.* The line may be a wavy one between coverage and noncoverage, especially with industrial complications in these ambiguous amphibious operations plus those arising from the personification of the vessel as an actor in a suit in rem. *But where injury is done through nonvessel operations, the vessel must be more than the inert locale of the injury. Nothing more occurred here, for it was Chevron's actions as a platform*

6

*operator or as a crane operator that caused the harm, and that does not make it a liability of a shipowner.*

*Id.* (emphasis added). It follows then that the holding required under this indistinguishable and controlling decision could not be clearer. Naquin's incident in no way arose out of EBI's conduct as "owner of the Vessel." *Naquin,* devoid of any indication that EBI was liable due to such conditions, confirms as much; this understanding alone forecloses EBI's arguments to the contrary. *See Naquin,* 744 F.3d at 937 ("EBI was the only party responsible for welding the LC–400 crane to its base, a weld which was indisputably defective and the direct cause of Naquin's injuries."). Furthermore, the land-based crane did not break on or even in close proximity to a vessel. Thus, EBI's attempts to craft a causal connection to a vessel are discharged, plainly and simply, by the underlying facts and *Naquin's* holding.

Where there is no causal operational relation between the vessel and the resulting injury, there is no extension of coverage for liability. We, therefore, arrive at the identical conclusion as the *Lanasse* court: "it was [EBI's] actions as platform operator or as a crane operator that caused the harm, and that does not make it a liability of a shipowner." 450 F.2d at 584.[3]

B. <u>Bad Faith</u>

Louisiana law instructs that in order for a claim of statutory bad faith to survive, it must be based on a valid underlying claim. *Matthews v. Allstate Ins. Co.*, 731 F. Supp. 2d 552, 566 (E.D. La. 2010). As discussed above, we hold that the Policy does not extend to EBI's liability associated with the defective crane; consequently, EBI has no valid underlying claim on which to stand.

---

[3] The district court also considered EBI's argument that SNIC was required to provide it with actual notice that the Policy limited coverage to EBI's conduct as owner of a vessel, ultimately finding the Policy's language "sufficiently clear" to give notice regarding the limitation of coverage. We agree that there existed no requirement that SNIC provide EBI with actual notice of the terms of the policy. *See, e.g.*, *Urban Planning and Innovations, Inc. v. Alexander & Sanders Ins. Specialist*, No. 07-7537, 2008 WL 191328, at *1 (E.D. La. Jan. 22, 2008).

No. 15-30471

Accordingly, the district court did not err in dismissing EBI's claim for bad faith.[4]

## III.

We **AFFIRM** the district court's grant of summary judgment in favor of SNIC.

---

[4] Because we affirm the district court's grant of summary judgment to SNIC, we also affirm the district court's denial of EBI's Motion to Reconsider pursuant to Federal Rule of Civil Procedure 59(e). Such motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment. *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Fed. Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)). In denying EBI's motion, the district court concluded: "EBI has failed to present evidence to show that this court's previous Order, granting summary judgment on EBI's claims in favor of SNIC, contained manifest errors of fact or law, and that EBI's motion is merely an attempt to rehash arguments which have already been raised before this court." We agree.