# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2025

Lyle W. Cayce
Clerk

———————

No. 24-20198

———————

Di Reed,

*Plaintiff—Appellant*,

*versus*

Joi Marshall; Tonya Harris, *also known as* Tonya Kelly;
Myracle Holloway,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3942

———————————————————

Before Smith, Graves, and Duncan, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

This appeal concerns an unharmonious split among three members of Jade, a rhythm and blues (R&B), hip hop, and soul, vocal group that rose to prominence in the 1990s. Appellant Di Reed contends that her fellow Jade members, Joi Marshall and Tonya Harris, violated the Lanham Act by performing under their co-owned JADE mark with another singer, Myracle Holloway. Because we conclude that the Lanham Act does not authorize claims between co-owners of a trademark, we AFFIRM the summary judgment for the defendants.

No. 24-20198

## I.

In 1991, three female singers—Di Reed, Tonya Harris,[1] and Joi Marshall—formed Jade. Jade enjoyed significant success, with several of its songs—including *Don't Walk Away* (#4) and *I Wanna Love You* (#16)—charting on the Billboard Hot 100 between 1991 and 1995. The group disbanded in 1995, when the members began pursuing their respective individual careers.

During their period of success, Jade's members entered into since-expired agreements to protect their brand. In May 1992, the three singers signed a recording agreement with Giant Records, a now-defunct record label. That agreement contained multiple exclusivity provisions, including that (1) no additional members could be added to Jade without consent from the three original singers and the record label, and (2) no more than one Jade singer could participate in a non-Jade recording. Nearly a year later, in April 1993, the group filed applications with the United States Patent and Trademark Office ("USPTO"). In September 1994, the USPTO registered the "JADE" service mark for "entertainment services, namely live performances by a musical group." This service mark was canceled in October 2001; at the time of cancellation, the mark was owned by "JADE," a "partnership" that included Marshall, Reed, and Harris.

In the two decades that followed their separation, Marshall, Reed, and Harris corresponded about a potential reunion, but no agreements materialized.[2] Finally, in 2018, the three agreed to a reunion tour, and

---

[1] "Tonya Harris" is professionally known as "Tonya Kelly." This opinion will refer to her as "Harris" to maintain consistency with the case caption.

[2] In 2013, Marshall and Harris published a YouTube video, called "Jade — Continuum" that included vintage footage of the group from the 1990s. Reed's then-

No. 24-20198

collectively applied for joint ownership of the "JADE" service mark. In June 2019, the USPTO approved their application and issued Service Mark Registration No. 5,787,227 for "[e]ntertainment services in the nature of live musical performances." The mark's registrants were listed as Reed, Marshall, and Harris, all in their individual capacities, and its first use in commerce was identified as July 1, 1992.

Discussions of the reunion tour were aborted, and in June 2021, Marshall and Harris entered into a six-month work-for-hire contract with a different singer, Myracle Holloway. Despite cease-and-desist letters issued by Reed's attorney, Marshall, Harris, and Holloway performed as Jade at multiple "90's Kickback Concert[s]" held in Milwaukee, Miami, and Houston, in November and December 2021. Promoters for these performances created social media advertisements that, Reed claims, inappropriately used her name, image, and likeness, along with the JADE mark.

On December 2, 2021, Reed sued Marshall, Harris, Holloway, and two other defendants in the Southern District of Texas.[3] She alleged four federal claims, all under the Lanham Act: infringement of the "JADE" service mark, dilution of the "JADE" service mark, and unfair competition through false designation of origin and false advertising; as well as violations

---

counsel served a cease-and-desist letter on Marshall and Harris that demanded they stop using the "JADE" name in conjunction with any ongoing music projects. Neither the record nor the pleadings explain what resulted from this exchange.

[3] The two other defendants, Olasheni Williams and Yung Fly Entertainment, Inc., were promoters of the "90's Kickback Concert." Those defendants reached a settlement with Reed, and were dismissed from the suit on October 11, 2022.

of Texas statutory and common law.[4] After responding to the complaint with an answer and counterclaims, the defendants moved to dismiss Reed's claims for lack of subject-matter jurisdiction on April 29, 2022. Defendants subsequently withdrew their motion to dismiss, reserved the right to file other dispositive motions, and began settlement discussions with Reed in June 2022.

Negotiations among Reed, Harris, Holloway, and Marshall were unsuccessful, and on June 19, 2023, the three remaining defendants moved for summary judgment (the "MSJ"). After motions practice concluded, the district court granted the MSJ on October 20, 2023. *Reed v. Marshall*, 699 F. Supp. 3d. 563 (S.D. Tex. 2023) (the "Summary Judgment Decision"). It concluded that (1) Reed could not allege Lanham Act trademark infringement and dilution claims against Harris and Marshall, who were co-owners of the mark, or Holloway, who performed as a licensee with Harris' and Marshall's permission; (2) the unfair competition claims could not survive summary judgment; and (3) supplemental jurisdiction did not exist as to the Texas law claims. *Id.*

After the district court granted summary judgment, the defendants moved for attorney's fees and costs. Reed, meanwhile, moved to supplement the record, for a new trial ("MNT"), and for relief from judgment under Rule 60 of the Federal Rules of Civil Procedure ("MRJ"). Reed's motion to supplement primarily focused on recently-discovered evidence showing that Harris, Holloway, and Marshall had agreed to perform at a March 2024 "R&B Block Party Concert" in the United Kingdom. Promoters for this

---

[4] Reed's state law claims included: (1) statutory dilution under Texas Business and Commerce Code § 16.103; (2) unfair competition, (3) misappropriation of right of publicity, (4) trademark infringement (against Holloway), and (5) for accounting (against Marshall and Harris).

concert—who are not parties to this suit or appeal—advertised the event through social media posts that featured Jade's songs and photos (and accordingly included Reed's voice and image).

On April 4, 2024, the district court granted Reed's motion to supplement the record but concluded that the additional evidence was cumulative. *Reed v. Marshall*, No. CV H-21-3942, 2024 WL 1468702 (S.D. Tex. Apr. 4, 2024) (the "Reconsideration Ruling"). It accordingly denied her MNT and MRJ. *Id.* Reed timely appealed.

## II.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The summary judgment is reviewed "de novo, construing all facts and inferences in the light most favorable to the nonmoving party." *Naquin v. Elevating Boats, L.L.C.,* 817 F.3d 235, 238 (5th Cir. 2016) (citing *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)).

## III.

Reed first alleges, as a procedural matter, that the district court abused its discretion by rendering summary judgment for any party. She claims that the district court acted "in three progressively prejudicial ways": (1) converting defendants' "substantive motion to dismiss for lack of subject matter jurisdiction into a challenge on the merits without notice," (2) "reinterpreting [her arguments] from subject matter jurisdiction challenges to statutory standing challenges," and (3) concluding, "*sua sponte*, that [she] did not have statutory standing under the *Lexmark* authority on its own." Reed's charge is effectively that the defendants did not substantively move for summary judgment—instead, they moved to dismiss on subject-matter jurisdiction grounds. In Reed's view, the district court went out of its way to

render judgment; she claims that resolving subject-matter jurisdiction "should have been the end of the [district court's] inquiry."

We begin by clarifying the jurisdictional concern that Reed invokes. In their MSJ, the defendants argued that "trademark owners cannot bring Lanham Act violation claims against co-owners of the mark." That challenge invokes statutory standing, and specifically, "whether or not a particular cause of action authorizes an injured person to sue." *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008). Importantly, statutory standing "has nothing to do with whether there is a case or controversy under Article III." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998). It instead concerns the "merits question" of whether the asserted cause of action is a proper vehicle for the claimed injury. *Blanchard 1986*, 553 F.3d at 409.

Keeping that distinction in mind, Reed's procedural arguments are generally meritless. First, Reed had ample notice that a motion for summary judgment was forthcoming. As noted above, defendants initially moved to dismiss all claims "for lack of subject matter jurisdiction" in April 2022. They withdrew that motion in June 2022, but expressly reserved the "right to file a motion for summary judgment" if settlement negotiations were unsuccessful. As deliberations continued into February 2023, the parties filed a joint "motion for continuance" acknowledging that the requested deadline extension would be used "to prepare dispositive motions to narrow the remaining issues if a trial is required." In short then, Reed should have anticipated a summary judgment motion once settlement negotiations failed.

Second, and contrary to Reed's claim that the district court "manipulated" a summary judgment concern, Marshall and her fellow defendants moved for summary judgment. Their motion was titled as a motion for summary judgment. And while Reed argues that the MSJ was

effectively identical in substance to the previously-withdrawn motion to dismiss, that observation does not negate her obligation to respond to the motion and its contents—including the requested relief.

Third, and as to substance, the defendants asserted, and then briefed, that "[t]rademark owners cannot bring Lanham Act violation claims against co-owners of the mark." They also argued that "Plaintiff's claims do not properly arise from the Lanham Act." Although the "standing" term is absent from the motion, the asserted claim plainly sounds in statutory standing, sufficient to place Reed on notice that this was a contested issue.

Finally, even if the substance of the MSJ was, in reality, a motion to dismiss for lack of subject-matter jurisdiction, Reed responded to the MSJ with an opposition containing 19 exhibits contemplating "matters outside of the pleadings." Reconsideration Ruling, 2024 WL 1468702 at *11. "If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under [Rule 56]." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Moreover, to the extent that Reed was blindsided by the summary judgment ruling, she afforded herself an opportunity to weigh in by moving for reconsideration (albeit in a misnamed MNT). Simply put, the record does not reflect a rogue district court that "raise[d] and render[ed] judgment on its own argument," and Reed's argument on this ground fails.

## IV.

Turning to the merits of this dispute, Reed chiefly argues that the district court erred in its resolution of her trademark infringement and unfair competition claims. The district court based its summary judgment on a conclusion that a co-owner of a trademark does not have a Lanham Act claim against fellow co-owners for alleged infringement or dilution of that mark.

While this finding is an issue of first impression before this court, we conclude that the district court's conclusion is substantively correct.

Critical to resolving this dispute is understanding that Reed, Marshall, and Harris entered into *joint ownership* of the JADE mark—that is, each individual owns a complete interest in the mark. Joint ownership of a mark has two interconnected problems. First, a mark is fundamentally intended to "identify and distinguish a single commercial source," not three distinct owners. 2 McCarthy on Trademarks and Unfair Competition § 16:40 (5th ed. 2025). Second, any discord between co-owners could result in "multiple, fragmented use" that may result in "consumer confusion and deception." *Id.* It is for these reasons that "joint ownership of a trademark is disfavored in the law," and that in the instances it does occur, parties often enter into "contractual agreements" to clarify outcomes should owner interests become unaligned. *Id.*

Here, the parties failed to enter into a contractual agreement that defined their respective obligations; and some of the mark's co-owners have had a falling out with another set of co-owners. But at bottom, the question before us is simpler: whether the Lanham Act, which is aimed at protecting consumers and mark owners from fraud and deceptive acts, provides an appropriate cause of action to remedy disputes between the co-owners of a trademark. The answer, for the reasons discussed below, is "no."

### A.    Trademark Infringement

Reed first asserts a federal trademark infringement claim against Holloway and contributory trademark infringement claims against Harris and Marshall. The cause of action has two components: "ownership in a legally protectible mark," and "infringement [of that mark] by demonstrating a likelihood of confusion." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008). But "we

begin with a threshold element: statutory standing." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023).

Whether a plaintiff's claim properly invokes a "legislatively conferred cause of action," and relatedly, whether the claim falls within the "zone of interests" of a statute, are resolved using "traditional tools of statutory interpretation." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). The trademark infringement cause prohibits individuals who, "without the consent of the registrant[,] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The statutory text makes this cause exclusive to the registrant of the trademark. And the Lanham Act designates "the owner [as] the only proper party to apply for registration of a mark." *Rex Real Est. I,* 80 F.4th at 616 (citing 15 U.S.C. § 1051(a)(1)).

The Supreme Court has accordingly recognized that "[r]egistration of a mark . . . under the Lanham Act enables *the owner* to sue an *infringer* under" the trademark infringement statute. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (emphases added, internal citation omitted). Our caselaw identifies a similar dichotomy between owners and infringers for trademark infringement purposes: "the precise wrong [that] trademark legislation seeks to prevent" occurs when a "deceived customer buys the infringer's product in the belief that it originates with the trademark owner or that it in some way is affiliated with the owner." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488 (5th Cir. 1971).

This division between owners and infringers is also consistent with Congress' intent in creating the Lanham Act. As the Supreme Court has

observed, the statute "requires no guesswork to ascertain Congress' intent" in crafting the law because the body "included a detailed statement of the statute's purposes." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106 (2014) (cleaned up, citations omitted). In particular, the Lanham Act was intended to "to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. § 1127. This aim sounds in protecting two categories of persons: consumers who are deceived by knockoff products, and owners, whose products and services are defrauded by imitators, from a third group: mark infringers who profit off of deception. Co-owners of a mark, who generally have the right to use their marks as they please, fall only on one side of this dividing line.

It is likely because of this framework that a leading trademark treatise has summarized: "[w]hen parties are co-owners of a mark, one party cannot sue the other for infringement. A co-owner cannot infringe the mark it owns." 2 McCarthy on Trademarks and Unfair Competition § 16:40 (5th ed. 2025). Similarly, as the district court noted, all courts "to consider the rights of co-owners in trademark cases have uniformly held that federal claims for infringement cannot be maintained against co-owners." Summary Judgment Decision, 699 F.Supp.3d at 577 (collecting cases).

We find *Piccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509 (E.D. Pa. 2015), particularly persuasive because of its factual similarity to the instant dispute. The case, which stemmed from the Eastern District of Pennsylvania, featured a trademark co-owner who was ousted from his Led Zeppelin-themed band by the mark's co-owners. *Id.* at 512. The co-owner and another plaintiff brought a trademark infringement claim to recover post-ouster profits earned by the band. But the district court concluded that "[a] co-owner with an equal right to use the trademark cannot be an imitator at

whom this statute is directed." *Id.* at 514–15.   In doing so, it relied on two points: a plain text analysis similar to that described above, and the observation that "the purpose of the Lanham Act is [] to protect both the public and the providers of goods and services—*i.e.* owners of marks—from imitators seizing to capitalize on the owner's hard-earned goodwill." *Id.* at 514.

Reed asserts that *Piccari* is unpersuasive because its analysis "entirely failed to consider scenarios in which the actions of a co-owner alter the public's perception of the mark vis-à-vis the other owners." But the question is not whether joint ownership of a trademark could cause confusion if co-owners went their separate ways, but whether the Lanham Act affords a statutory right for those co-owners to sue each other.   And, as *Piccari* recognized, "[a] co-owner with an equal right to use the trademark cannot be an imitator at whom" the trademark infringement statute is directed.  115 F. Supp. 3d at 514–15.  Simply put, Reed cannot direct Lanham Act contributory infringement claims against Harris and Marshall, who are fellow owners of the mark allegedly being infringed.

Resolving Reed's infringement claim against Holloway charts a similar course.  Marshall and Harris, as persons with complete ownership interests in the mark, have an unencumbered right to use the mark as they please.  "A trademark co-owner does not infringe upon his co-owners rights by exercising his own right of use." *Puri v. Yogi Bhajan Admin. Tr.*, No. CV 11-9503 FMO (SHX), 2015 WL 12684464, at *11 (C.D. Cal. Oct. 30, 2015) (citations omitted).  "It reasonably follows, then, that a valid licensee of one co-owner of a trademark cannot be liable to another co-owner for infringement." *E. W. Tea Co., LLC v. Puri*, No. 3:11-CV-01358-HZ, 2022 WL 900539, at *6 (D. Or. Mar. 28, 2022) (citation omitted).

Reed disagrees with these licensee-related principles, and offers two responses. First, she concedes that "she would be foreclosed from an action against [Holloway] were [Holloway] a proper licensee," but contends that Marshall and Harris are mere "fractional[] registrants and owners of the JADE Mark." But absent proof of a contractual agreement that enumerates such a fractional division, her argument is aspirational and unreflective of the actual rights to the JADE mark. Indeed, Reed's argument is further undercut by her later statement that if "Marshall and Harris want to use the mark on their own, they should be free to do so."

Second, she asserts that any reliance on *East West Tea* is misguided because the Oregon district court's analysis "rested primarily upon *Piantadosi*," a Ninth Circuit case concerning copyright law. *See Piantadosi v. Loew's, Inc.*, 137 F.2d 534, 534–35 (9th Cir. 1943). We disagree with this characterization; the *East West Tea* court's findings were derived from the weight of authority concluding that co-owners are not proper defendants in Lanham Act infringement cases, as well as the principle that co-owners do not infringe upon the ownership rights of others by exercising their own right to use the mark. *E. W. Tea Co.,* 2022 WL 900539 at *6. At best, *East West Tea* cites to *Piantadosi* in a *cf.* citation—in other words, a comparison by analogy—and uses copyright law as a point of reference, not as a primary rationale, for its holding. *Id.*

Simply put, "[w]hile joint ownership of trademarks is disfavored because it could lead to consumer confusion, it is not prohibited under federal trademark law, and [Marshall and Harris] are within their rights as co-owners to license their interest in the Marks to [Holloway]." *E. W. Tea Co.*, 2022 WL 900539 at *6. The Lanham Act does not afford a trademark infringement cause of action between co-owners of a mark, and the district court correctly granted summary judgment in the defendants' favor.

### B.    Trademark Dilution

Next, Reed appeals the district court's summary judgment determination with respect to her trademark dilution claim. The cause of action addresses "the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004) (citations omitted). In this court, a trademark owner must prove three elements in support of the claim: "that its marks are famous and distinctive," that the defendant "adopted its mark after [the owner's] had become famous and distinctive," and "that [the defendant] caused dilution of [the owner's] mark. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 (5th Cir. 2000). Once again, though, this case presents the antecedent question of whether Reed has the ability to sue the defendants for dilution in the first place.

The trademark dilution statute entitles "the *owner* of a famous mark that is distinctive . . . to an injunction against *another person* who . . . commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." 15 U.S.C. § 1125(c)(1) (emphases added). The statute's provisions are notably cast in reference to the rights of an owner. For example, a consideration for the "dilution by blurring" cause of action is whether "the owner of a famous mark is engaging in substantially exclusive use of the mark," *id.* § 1125 (c)(2)(B)(iii), while an exception to the claim as a whole is "identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner," *id.* § 1125(c)(3)(A)(ii).

One other textual feature is worth highlighting. The plain text of 15 U.S.C. § 1125(c)(1) signals that at least two distinct marks need to be in play for dilution to occur: "the famous mark" possessed by an owner, and an imposter "mark or trade name" that causes dilution of the original mark. At

least one district court has concluded that "[t]he plain language of these provisions appears . . . to distinguish between 'the mark's owner' and the person against whom an action may be brought." *Derminer v. Kramer*, 406 F. Supp. 2d 756, 758 (E.D. Mich. 2005). And that distinction is absent here: the famous mark that Reed owns, and the one that defendants are allegedly improperly using, are literally one-and-the-same.

We find *Derminer*'s reasoning particularly persuasive. The case, from the Eastern District of Michigan, featured a dispute over a registered mark that was jointly owned by the members of a rock band. One of the band's members passed away, and his interest in the trademark was inherited by the eventual plaintiffs. Those plaintiffs sued under the Lanham Act after the band's remaining members released recordings without their consent or any accounting of revenues. The magistrate judge recommended that when "a mark is held by multiple owners[,] each owner would have an equal right to use the mark such that a joint owner cannot be held as an infringer against any other joint owner." *Derminer v. Kramer*, No. 04-CV-74942-DT, 2005 WL 8154857, at *7 (E.D. Mich. July 14, 2005) (citation omitted).

The district court adopted the magistrate judge's recommendations, 386 F.Supp.2d 905 (E.D. Mich. 2005), and subsequently denied the plaintiffs' motion for reconsideration, 406 F. Supp. 2d 756, 757 (E.D. Mich. 2005). In that denial, the district court interpreted the statute and came out with a conclusion similar to the analysis above: under "the language of the [trademark infringement] statute, there are two classes of parties: owners of marks, and 'another person.'" *Id.* Accordingly, "Congress never intended to create a trademark dilution cause of action between owners" of the same mark. *Id.*

Reed asserts that *Derminer* is of little use because it references patent law, which allegedly embraces co-ownership and allows for the distribution

of licenses without consent from co-owners. She argues that trademark law, in contrast, is premised on an indivisible, singular mark that "communicate[s] information about the source of goods and services directly to customers." But that objection concerns an *ex ante* policy question of whether marks *should* be issued to multiple individuals, not what to do once co-ownership has been established. And, Reed's objections regarding the inapplicability of patent and trademark law do not displace the plain text analysis that makes the cause exclusive to an "owner" alleging dilution by "another person." 15 U.S.C. § 1125(c)(1). The district court did not err in concluding that Reed could not assert a Lanham Act trademark dilution claim against the defendants.

## V.

Lastly, Reed appeals the summary judgment over her false advertising and false designation of origin claims. Both causes of action stem from the Lanham Act's provisions regulating unfair competition. Section 43(a) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125.  These provisions "create[] two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark*, 572 U.S. at 122 (citation omitted).

## A.    False Advertising

With regard to false advertising, Reed alleges that the "[d]efendants' unauthorized use of [her] JADE Mark . . . in conjunction with the promotion and provision of live entertainment services constitutes unfair competition and false advertising."  More specifically, she claims that in using the JADE mark, the defendants falsely advertised that "Holloway is a member of the group Jade" and "that the performances promoted and provided by Defendants are those of the group Jade."

The district court granted summary judgment for the defendants for two overlapping reasons.  First, it noted that both of Reed's unfair competition theories hinged on the incorrect premise that defendants were using the JADE mark in an unauthorized manner.  Summary Judgment Decision, 699 F. Supp. 3d at 586.  Second, it observed that the factual record lacked any evidence that defendants' use of the JADE "mark in commerce proximately caused Plaintiff to suffer injuries to commercial interests in business reputation or sales."  *Id.*

Both explanations are sound.  Reed's purported Lanham Act injuries are premised on "defendants' unauthorized use" of the JADE mark, but as detailed above, Harris and Marshall, as co-owners, are allowed to use the mark as they so choose—including licensing its use for performances that include Holloway.  And as for the injury concern, the Supreme Court held in

*Lexmark* that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." 572 U.S. at 131–32.

Reed's assertions of error as to false advertising are difficult to decipher. She claims that she satisfied "the minimum requirement of alleging an injury to a commercial interest in reputation or sales." But the proceedings are at the summary judgment stage, where the nonmoving party must "make a showing sufficient to establish the *existence* of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). Said otherwise, while allegations of injury are sufficient to withstand a motion to dismiss, evidence of injury is required to survive a motion for summary judgment.

And evidence of any "injury to a commercial interest in reputation or sales" is lacking from the record. *Lexmark*, 572 U.S. at 132. Reed's best allegation is that in marketing materials for the 2024 "R&B Block Party" concert, the event's promoters created social media posts that included a Jade song that featured Reed's voice. But with respect to the Lanham Act, Reed concedes that "[a] person's name, image, or likeness cannot function as a trademark such that it affords a plaintiff a cause of action for trademark infringement," and in any event, the promoters who made the advertisements in question are not parties to this suit.

Finally, Reed claims commercial injury through "lost opportunities such as the creation of new compositions under JADE name and subsequent profits from new compositions"; "business reputation in the form of deliberate exclusion from promotional appearances under JADE name"; and lost "performances under the JADE name." Notwithstanding the lack of evidence to support these theories, the defendants' co-ownership of the JADE mark does not exclude Reed from using the mark as she pleases. In

other words, the defendants' use of the JADE mark has not caused Reed to "los[e] opportunities" associated with the mark; she, as a co-owner, has the right to pursue those opportunities consistent with the (lack of) conditions linked to her ownership interests. Reed has accordingly not evidenced the injury necessary to sustain her false advertising claim.

## B.    False Designation of Origin

As for her false designation of origin (also known as false association) claim, Reed asserts that the defendants' "unauthorized use" of the JADE "mark" and her "voice and likeness in commerce" was "likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services." She specifically claims that the defendants' illegal use of the JADE mark was "likely to cause consumers to believe" that the Holloway-Marshall-Harris performances were "affiliated with or sponsored by" her. The district court dismissed Reed's false designation of origin claim for the same reasons as its dismissal of the false advertising claim: (1) she failed to plead any injury to her commercial interests; and (2) even if she did fall within the statute's zone of interests, her injuries were not proximately caused by a violation of the Lanham Act.

The second rationale is dispositive here.[5] As the district court aptly explained, even if Reed fell "within the zone of interests" for a false designation of origin claim, "the result would be the same because [her] Lanham Act claims are all premised on allegations that Defendants are using the [JADE] mark without authorization." Reconsideration Ruling, 2024 WL 1468702 at *13; *cf. Lexmark*, 572 U.S. at 133 (barring "suits for alleged harm that is 'too remote' from the defendant's unlawful conduct"). Here, as to

---

[5] We express no determination as to whether a false designation of origin claim, as opposed to a false advertising claim, requires proof of commercial injury.

the ownership rights of the mark itself, Harris and Marshall have not engaged in "unlawful conduct": their ownership rights afford the authority to (1) perform under the mark and (2) license Holloway as a guest to perform with them. Those facts doom Reed's theory of liability as to her false designation of origin claim.

## VI.

This case is illustrative of the perils associated with co-ownership of a mark, and serves as a clarion call that parties considering such should establish an agreement outlining their contractual rights in the event they part ways. At bottom, the Lanham Act does not support Reed's theories of liability against her mark co-owners or their licensee, and accordingly, we AFFIRM the summary judgment in the defendants' favor.